liPER CURIAM.*
This is a workers’ compensation case. The workers’ compensation judge found plaintiff failed to establish a work-related accident and thus dismissed plaintiffs claim. The court of appeal reversed, holding that plaintiff established both a work-related accident and a resulting physical and mental disability. We granted certiorari to review the correctness of that decision. For the following reasons, we conclude that even if an accident of some type was established, the plaintiff failed to prove any resulting disability.

Facts

Plaintiff alleged he was injured m the course and scope of his employment as a patrolman for the Town of Arnaudville. The unwitnessed one-car accident allegedly occurred on December 31, 1994 when plaintiff, while chasing a speeding motorist, lost control of his patrol car and went into a ditch. Paramedics and other police officers corroborated that plaintiff was found in his police car in an unconscious state. There was minimal damage to the car consisting of a dent to the kfront bumper and a badly bent steering wheel. Likewise, plaintiffs apparent physical injuries were minimal, consisting of an one-inch contusion on the forehead and a cut on his right hand, neither of these injuries required stitches.
At the hospital, plaintiffs primary complaint was his inability to feel or move his legs. Dr. Patrick A. Juneau, III, a neurolo *1281 gist, found no physical abnormalities to which to relate plaintiffs paralysis.[1] Dr. Juneau referred plaintiff to Dr. David Dawes, a psychiatrist, who initially diagnosed a conversion disorder. On further referral, Dr. Larry Be-noit, a psychologist, noted plaintiffs lack of cooperation coupled with “his preoccupation with the financial [and legal] issues,” and concluded that “there is a strong possibility of malingering.” Likewise, Dr. Dawes final assessment was a malingering disorder.
At the end of his two-week hospital stay, plaintiff walked out the hospital using a walker and did not seek medical care for five months. In June 1995, plaintiff saw Dr. Michel Heard, an orthopedic surgeon, who diagnosed post-traumatic multiple trauma with persistent headaches, neck pain and low back pain. After treatment through June 1996, Dr. Heard released plaintiff to light duty work.
The workers’ compensation judge found plaintiff failed to establish a work-related accident because plaintiffs “testimony is not corroborated by the circumstances following the accident.”
In a split decision, the appellate court reversed, concluding that the judge was manifestly erroneous in failing to find a work-related accident. The court reasoned that Thomas’ testimony about the occurrence of the accident was corroborated by the condition in which he was found, the damage to the vehicle, and the location of the ^vehicle in a ditch adjacent to the road. The court then determined that the medical evidence established both a physical and mental disability, and also awarded penalties and attorney’s fees for the defendants failure to reasonably investigate the claim before denying benefits. However, the court concluded that the record was incomplete for calculating the benefits due and remanded on that issue.
After reviewing the record, we conclude that even if the appellate court was correct as to the occurrence of an accident, neither a mental nor a physical disability was established to have resulted from this accident.

Mental Disability

La.Rev.Stat. 23:1021(7) imposes heightened standards for establishing mental disability, including a requirement that such injury be diagnosed by a licensed psychiatrist or psychologist and a requirement that such injury be established by clear and convincing evidence. Neither of these two requirements were met in this case.
While plaintiff was treated by both a psychiatrist and a psychologist during his fourteen-day hospital stint, the final assessment by both experts was that plaintiff was a malingerer. Moreover, the record establishes more likely than not that plaintiff was malingering or faking his paralysis rather than suffering a psychological disorder. The court of appeal’s conclusion that plaintiff met his burden of establishing a mental injury was thus erroneous.
Regardless, plaintiffs attorney conceded in this court that plaintiff was not seeking to recover compensation for any type of mental disability, but primarily was seeking recovery of benefits due from the original physical injuries and medical expenses from his initial extensive hospitalization.[2]

|^Physical Disability

In concluding that plaintiff sustained a physical disability as a result of the accident, the court of appeal cited the presumption that when an accident and an ensuing disability are proved with no intervening cause, it is presumed the accident caused the disability. The court reasoned that because the record does not reveal an intervening cause which could have caused the injuries complained of by plaintiff, a finding of disability was warranted.[3]
*1282 The court of appeal’s analysis skipped over the issue of causation. While the court referred to the strong evidence of “functional paraplegia,” that is simply another name for the conversion disorder which, as noted above, was ruled out by the qualified psychiatrist and psychologist.
The sole evidence linking plaintiffs complaints of physical disability to the ^alleged accident was plaintiffs testimony. Plaintiff presented no medical proof directly linking any physical ailment, save for the lacerations to the head and hand, to the work-related accident. Dr. Heard, the orthopedist who treated plaintiff for over a year, was neither deposed nor called as a witness at trial, and his records merely reflected that plaintiff relayed to him that he had been in a one-car accident five months prior to his first office visit.
The presumption relied on by the court of appeal does not come into play under these facts. Simply put, plaintiff failed to establish a post-accident physical disability by a preponderance of the evidence. The contrary conclusion by the court of appeal was clearly erroneous.

Decree

For the foregoing reasons, the judgment of the court of appeal is reversed, and the judgment of the Workers’ Compensation Judge in favor of the Town of Arnaudville, dismissing the claim of Willis Thomas, is hereby reinstated.

 Johnson, J., not on panel. Rule IV, Part 2, § 3.

. CT scans of the head, cervical, thoracic and lumbosacral spines and a MRI of the thoracic spine and lumbar spine were all essentially normal.

. The Town of Arnaudville was self-insured. Its risk manager initially paid plaintiffs hospital bills, but denied coverage of rehabilitation expenses as of January 3, 1995. The extent to which other hospital bills were not paid is unclear from the record.

.The court outlined the injuries as follows:
Thomas suffered injuries in the form of muscle strains in various areas of the body. Dr. Dunlap stated in his consultation report dated January 1 st, "I didn’t get him out of bed. I believe he has a Bardex. There is strong evi *1282 dence that this is functional paraplegia. I think he must have strained muscles all over, especially in his neck and back and he has some aches and pains.” Dr. Juneau also stated in his deposition that Thomas experienced low back pain during his stay at the hospital, which he attributed to muscle ligamentous strain. In addition, Dr. Heard, the orthopaedic surgeon who treated Thomas from June 1995 through June 1996, wrote in a June 20, 1995 narrative report that his impression was that Thomas suffered from post-traumatic multiple trauma with persistent headaches, neck pain, and low back pain. Consequently, he treated Thomas for constant pain in the neck and low back for two months before releasing him to perform light and sedentary activities on August 30, 1995. Thomas was not released for regular duty work until November 16, 1995. Unfortunately, he returned to Dr. Heard on Jañuaiy 16, 1996, complaining of increased neck and low back pain, and was one again given a Celestone and Marcaine block and prescription Motrin. Dr. Heard then reduced his release from regular activities to the performance of light and sedentaiy activities as tolerated. The last report from Dr. Heard contained in the record, dated June 5, 1996, shows that he was still being treated for pain.
97-1003 atpp. 16-17, 713 So.2d at 555-56.